IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

**STATE OF TENNESSEE v. SAMUEL W. DOWDY**

**Direct Appeal from the Criminal Court for Sumner County**
**No. CR705-2001 (8625)     Jane W. Wheatcraft, Judge**

_____

**No. M2001-03064-CCA-R3-CD - Filed July 9, 2002**

_____

The Defendant pled guilty to attempt to commit aggravated sexual battery and received a three-year suspended sentence. Approximately nine months later, a probation violation warrant was issued against the Defendant, alleging that the Defendant had violated his probated sentence by failing to report and by failing to attend a sexual perpetrators program. Following a hearing, the trial court revoked the Defendant's probation and ordered him to serve his sentence. This appeal followed. Following a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Thomas J. Smith, Assistant Public Defender, Gallatin, Tennessee, for the Appellant, Samuel W. Dowdy.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Sallie Wade Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

I. Procedural History

In June, 1994, the Sumner County Grand Jury indicted the Defendant for the offense of aggravated sexual battery. On January 23, 1995, the Defendant pled guilty to the amended charge of attempt to commit aggravated sexual battery. Pursuant to a plea agreement, the Defendant was sentenced to three years in the Tennessee Department of Correction, which was immediately suspended. The Defendant was placed on supervised probation, "with the Defendant to be assessed and attend a sexual perpetrators program - [and to have] no future contact with the victim or her family." On September 20, 1995, a violation of probation warrant was issued against the Defendant.

In the warrant, the Defendant's probation officer alleged that the Defendant "failed to report in July and August, 1995. He last reported on 6-5-95." Additionally, the warrant alleged that "Mr. Dowdy has not verified any assessment or attendance to a sexual perpetrators program."

On October 29, 2001, the trial court conducted a hearing on the allegations in the probation violation warrant and found that the Defendant had violated the terms and conditions of his probated sentence. The trial court revoked the Defendant's probation and ordered the Defendant to serve his sentence in the Tennessee Department of Correction. The Defendant now appeals this determination by the trial court. We affirm the judgment of the trial court.

## II. Facts

At the hearing on the warrant alleging that the Defendant had violated his probation, the trial court heard the testimony of the Defendant's probation officer, the Defendant, and the Defendant's cousin. Kevin Rhodes testified that he is an employee of the State Probation Office and that he was the Defendant's probation officer. He testified that the Defendant was convicted on January 23, 1995, and that he began his supervision of the Defendant on March 28, 1995. Mr. Rhodes testified that the Defendant reported to the probation office a total of four times, the last being on June 5, 1995. He stated that the Defendant failed to report in July and August of 1995 and had not reported since. Mr. Rhodes also testified that the Defendant had failed to attend the sexual perpetrators counseling program as required by the terms of the Defendant's probation. Mr. Rhodes testified that the Defendant contacted the Lawrence County Mental Health Center and scheduled an appointment for June 22, 1995. However, according to Mr. Rhodes, the Defendant never followed up on that and "absconded." Mr. Rhodes explained that the Defendant had signed a copy of the rules of probation on February 23, 1995, and a copy of the rules of probation signed by the Defendant was admitted as evidence.

The Defendant testified that he was living with his mother at the time he was placed on probation, but several months later his mother threw him out of the house. The Defendant stated that when his mother came in drunk one night, she began fighting with her fourth husband, and "they throwed [sic] [the Defendant] out." The Defendant testified that for a few months thereafter, he lived in the woods under a bridge. He explained that it was during that period of time that he failed to contact his probation officer. His efforts to contact his probation officer were also hampered by the fact that the car that he had bought for $100 had "just blowed [sic] up" a few weeks before his mother threw him out of the house.

The Defendant testified that at the time of the hearing, he was living with his girlfriend of eight years, Donna Pinkerton, who was pregnant at the time of the hearing and with whom he had a three-year-old son. The Defendant explained that he was stopped for a speeding ticket and served with the warrant alleging that he had violated his probation. He denied ever being in any previous trouble. He also stated that he had not "been in . . . trouble since" being convicted in this case. The Defendant attributed his difficulties in large part to his mother, whom he described as having been

in "a lot of trouble through the years." He stated, "She's been married several times. She shot her second husband. Been in and out of court and jail. Just gets kind of crazy drinking."[1]

The Defendant testified that at the time of the hearing, he was working for Morgan Construction Company in Clarksville, Tennessee. He maintained that he would be able to attend a sexual perpetrators program if it were available. The Defendant also indicated that he was suffering from a medical problem, stating "somehow I tore the muscles loose in my chest. From my breastbone to the center of my backbone, they're tore loose and the bones they attach to, from what I gather."

Finally, the court heard the testimony of Drane Kent, who indicated that he is a distant cousin of the Defendant. Mr. Kent indicated that the Defendant had been attending church for a few months prior to the hearing and that the Defendant was "living like a man ought to live." He also indicated that the Defendant has a reputation of being a hard worker and "will do what he says he's going to do." Mr. Kent testified that he and other members of his church would assist the Defendant "in any way, shape, or form, transportation or anything else, if he needs it." On cross-examination, Mr. Kent indicated that he was not aware that the Defendant's guilty plea involved the molestation of a young girl, and he testified that the church members were not aware of this fact either.

After hearing the evidence, the trial court determined that the Defendant had violated the terms of his probated sentence. The trial court observed that the Defendant's "story" "lacks in credibility." Noting that the Defendant had absconded and did not attend sex offender treatment, the trial court ordered that the Defendant serve his sentence and ordered that the Defendant be taken immediately into custody.

### III. Analysis

We begin our analysis with several well-settled principles of law pertaining to the revocation of a probated sentence. When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. Tenn. Code Ann. § 40-35-311(e). Once the trial court makes such a finding, it is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." Id. When probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." Id. § 40-35-310.

The decision to revoke probation is in the sound discretion of the trial judge. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins,

---

[1] This testimony was corroborated by the Defendant's cousin, Drane Kent, who testified when referring to the Defendant's mother, "Like Sam told y'all, she married three, four, five times we know of. She would fight a circle saw. I'm not saying I'm an angel, but, man alive, she was a hell cat."

811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. Id.; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

In this case, the Defendant conceded that he failed to report to his probation officer and failed to complete a sexual perpetrators program as required by the terms and conditions of his probated sentence. Although the Defendant testified that his living circumstances deteriorated rapidly within a few months of his being placed on probation, he was unable to provide any valid reason for his failure to report and his failure to complete a sexual perpetrators program. As the State points out in its brief, the trial court specifically stated that it did not find the Defendant's story to be credible.

The evidence at the probation revocation hearing established that the Defendant violated the terms and conditions of his probation. The trial court therefore had the authority to revoke his probation. The record does not indicate that the trial court abused its discretion in exercising such authority. In our view, the trial court exercised conscientious judgment in revoking the Defendant's probation and ordering him to serve his original sentence in confinement.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE